**UNITED STATES BANKRUPTCY COURT**

DISTRICT OF NEW JERSEY

M.L. KING, JR. FEDERAL BUILDING

50 WALNUT ST., 3RD FLOOR

NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH     (973) 645-4693

BANKRUPTCY JUDGE     Fax: (973) 645-2606

**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

OCT. 24, 2011

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ Ronnie Plasner, DEPUTY
```

October 24, 2011

**LETTER OPINION**

**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Meyner and Landis LLP     Bray & Bray, L.L.C.
David B. Grantz, Esq.     Peter R. Bray, Esq.
One Gateway Center, Suite 2500     Ivy Corporate Park
Newark, New Jersey 07102     100 Misty Lane
*Counsel for Plaintiff,*     Parsippany, New Jersey 07054
*The Provident Bank*     *Counsel for Debtor-Defendant,*
    *Basil Pandolfelli*

Re:    **The Provident Bank v. Pandolfelli**
      **Adv. No. 09-02070 (DHS)**
      **In re Basil Pandolfelli**
      **Case No. 09-18941 (DHS)**

Dear Counsel:

     Before the Court is a motion by Basil Pandolfelli ("Defendant"), pursuant to Federal Rules of Civil Procedure 60(b)(1) and (6), to vacate a default judgment entered against him in the instant adversary proceeding in favor of The Provident Bank ("Provident"). Provident

Page 2
October 24, 2011

argues that the Defendant has failed to satisfy the requirements for vacatur under either subsection.

The Court has jurisdiction over the motion pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding pursuant to § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. For the reasons that follow, the motion is denied.

## FACTS AND PROCEDURAL HISTORY

The Defendant filed for chapter 7 bankruptcy relief on April 9, 2009. Thereafter, on July 21, 2009, Provident commenced the instant adversary proceeding to bar the discharge of debts owed to it pursuant to 11 U.S.C. § 523(a) for false pretenses, false representations, or actual fraud.

The Defendant held a 100% interest in, and was the Chairman and Chief Executive Officer of, a business known as RCA Capital Corp. ("RCA"). RCA was in the business of leasing and financing printing equipment. RCA defaulted on multi-million dollar loan obligations owed to various creditors, including Provident. The Defendant had personally guaranteed millions of dollars of these obligations. Provident alleges that in order to secure the loans, the Defendant pledged the same collateral to several different lenders for an amount far in excess of its true value. When RCA filed its own chapter 7 petition on April 8, 2009, it listed Provident's debt as "undisputed, secured." It listed the Defendant as a co-debtor on Schedule H. Neither the Defendant nor RCA objected to Provident's proof of claim, nor to subsequent claims filed in the Defendant's case.

Provident served an adversary complaint ("Complaint") on the Defendant by first class mail on July 30, 2009 at the address of his bankruptcy attorney. (See Decl. in Supp. of Pl.'s Req. for Entry of Default, ¶ 4, Sept. 21, 2009) The Defendant did not respond to the Complaint before the thirty-day deadline expired. After the deadline expired, the Defendant was granted an extension to answer through September 8, 2009. On September 18, 2009, Provident filed a request to enter default for failure to answer or otherwise move. On December 14, 2009, prior to entry of default in this matter, the Defendant filed a motion to vacate default and to file an answer out of time.

In support of the motion, the Defendant argued for the first time that his delay in answering was a result of having limited funds due to his pending divorce, thus making it difficult to retain the counsel of his choice. (Def.'s Aff. in Supp. of Notice of Mot. to Vacate Default, ¶ 5, Dec. 14, 2009) Defendant stated that he first spent a considerable amount of time searching for an attorney. *Id.* Having located satisfactory counsel, he stated that he was further

Page 3
October 24, 2011

delayed by a state court order entered in connection with his pending divorce litigation that froze his assets. *Id.* After negotiating with his wife's matrimonial attorney, he was able to access sufficient funds to retain his preferred counsel.

The Defendant's proposed answer, however, included only conclusory statements and general denials, not a meritorious defense. For example, he asserted that if any misrepresentation to his lenders occurred, it was caused by RCA and that he did not have access to RCA's records at the time. (Def.'s Proposed Answer to Compl., pp. 3-4, Dec. 14, 2009) Defendant also responded that he was "in the process of engaging, and will after this Answer is filed engage, a forensic accountant to review the books and records of RCA and provide a true and accurate account of the transactions extant there." (*Id.* p. 8) As discussed below, the proposed answer was rife with broad denials and vague qualifications that did not constitute a complete or meritorious defense to Provident's allegations. *See JPMorgan Chase Bank, N.A. v. Pandolfelli,* 2010 WL 3745123, at *6 (Bankr. D.N.J. Sept. 14, 2010).[1]

From January 26, 2010 until March 1, 2010, the hearing on the motion to vacate default was adjourned three times. A review of the docket indicates that the Defendant requested at least one of the adjournments. On March 1, 2010, the Court held a hearing on the motion. In an effort to allow the parties to resolve the matter themselves, the Court reserved judgment for a period of several months. When it became clear that no settlement would be reached between the parties, the Court, on September 14, 2010 ("September 14 Opinion"), issued an opinion denying vacatur, finding that:

> Defendant's failure to allege specific facts that constitute a complete defense to the claims against him is fatal [to his motion] . . . . However, even if the Defendant did offer valid defenses, his culpable conduct in causing the delay, combined with the danger of prejudice to the Plaintiffs, both militate against vacatur of the defaults.

*Id.* On September 28, 2010, the Defendant sought leave to appeal the Court's decision. On March 14, 2011, the District Court denied leave to appeal. On April 20, 2011, the Court entered default against the Defendant. On May 26, 2011, Provident filed a request for entry of default judgment.

On July 19, 2011, the Clerk entered default judgment against the Defendant in the amount of $2,027,608.30. On August 1, 2011, the Defendant filed the instant motion to vacate the default judgment pursuant to Rule 60(b)(1) and (6) and compel a proof hearing as to the elements of § 523(a)(2)(A).

---

[1] The Court's September 14 Opinion addressed four separate adversary proceedings. Because the relevant facts were common to each motion and the issues of law identical, the Court addressed them collectively.

Page 4
October 24, 2011

## DISCUSSION

### I. Vacatur of Default Judgment under Rule 60(b)(1)

"The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Coltec Indus., Inc. v. Hobgood,* 280 F.3d 262, 271 (3rd Cir. 2002) (quoting *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)). Federal Rule of Civil Procedure 60(b)(1) allows a court to relieve a party of a judgment due to "mistake, inadvertence, surprise, or excusable neglect." The Third Circuit, in *Budget Blinds, Inc. v. White,* held that a district court should consider the following factors when determining whether to vacate a judgment under Rule 60(b)(1): "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 256 (3d Cir. 2008) (citing *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192 (3rd Cir. 1984). At the threshold, the Court must ask whether the Defendant possesses a meritorious defense. *Frost v. Subramanian (In re Subramanian)*, 245 F. App'x. 111, 115 (3d Cir. 2007) (citing *Resolution Trust Corp. v. Forest Grove,* 33 F.3d 284, 288 (3d Cir. 1994)).

### A. Meritorious Defense

The Third Circuit in *Frost v. Subramanian* stated that:

> [A] defendant does not have the right to have a default judgment set aside automatically upon alleging a defense. Rather, we impose a more stringent standard which requires that a defendant seeking to set aside a default judgment set forth with some specificity the grounds for his defense. The court must then evaluate that defense to determine whether it is meritorious.

*Subramanian*, 245 F. App'x. 111 at 115 (quoting *Harad v. Aetna Cas. & Sur. Co.,* 839 F.2d 979, 982 (3d Cir. 1988)). In the instant case, default was entered in December 2009. In that same month, the Defendant filed a motion to vacate the default, which this Court denied. In the Opinion that accompanied the Order, the Court determined that the Defendant lacked meritorious defenses and his proposed answers were nothing more than "conclusory statements and denials." *JPMorgan Chase Bank, N.A.*, 2010 WL 3745123 at *5-6. As noted above, the Defendant subsequently appealed that decision to the District Court and the appeal was denied.

Pursuant to § 523(a)(2)(A), a party seeking to bar a debtor's discharge for fraud must prove five elements by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 288, 111 S. Ct. 654, 660, 112 L. Ed. 2d 755 (1991). The elements are as follows:

Page 5
October 24, 2011

> (1) that the debtor obtained money, property or services through a material misrepresentation; (2) that the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) that the debtor made the misrepresentation with intent to deceive; (4) that the plaintiff reasonably relied on the representation; and (5) that the plaintiff suffered [a] loss . . . proximately caused by the debtor's conduct.

*See* 11 U.S.C. § 523(a)(2)(A); *In re Santos*, 304 B.R. 639, 651 (D.N.J. 2004). "Although fraud supporting nondischargeability may not be implied in law, it may be inferred as a matter of fact." *In re Santos*, 304 B.R. at 665-66; *Palmacci v. Umpierrez*, 121 F.3d 781, 789 (1st Cir. 1997). Furthermore, the fact finder may "infer[ ] or imply[ ] bad faith and intent to defraud based on the totality of the circumstances when convinced by a preponderance of the evidence." *Palmacci* 121 F.3d at 789 (quoting *In re Anastas*, 94 F.3d 1280, 1287 n.3 (9th Cir. 1996)). In *Palmacci*, the First Circuit acknowledged that direct proof of intent is nearly impossible to attain, and as such, the creditor may proffer evidence regarding the surrounding circumstances from which intent can be inferred. *Id.* "The focus is, then, on whether the debtor's actions 'appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor.'" *Palmacci,* 121 F.3d at 789 (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287-88 (8th Cir. 1987)).

The court in *Palmacci* also found that "[d]eference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'" *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997) (quoting *Commerce Bank & Trust Co. v. Burgess* (*In re Burgess*)*,* 955 F.2d 134, 137 (1st Cir. 1992)) (applying 11 U.S.C. § 727(a), relating to fraud by the debtor in representations in the course of the court proceeding).

Here, elements (1), (4), and (5) are undisputed insofar as RCA pledged the same collateral to Provident that it pledged to other lenders, thereby causing Provident to incur a loss as a result of the material misrepresentations. Thus, the Court will focus on elements (2) and (3), knowledge and intent, respectively.

Actual fraud "consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another — something said, done or omitted with the design of perpetuating what is known to be a cheat or deception." *Grumbine v. Azeglio (In re Azeglio)*, 2010 WL 4864439 at *4 (Bankr. D.N.J. Nov. 23, 2010); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (Lawrence P. King ed., 15th ed.)). "Section 523(a)(2) requires a plaintiff to prove that the defendant knew of the false nature of his statements and that he made them with an

Page 6
October 24, 2011

intent to mislead or deceive his potential lender." *In re Poskanzer*, 143 B.R. 991, 999 (Bankr. D.N.J. 1992).

Provident's Complaint alleges that RCA pledged the same collateral to multiple creditors for an amount in excess of its actual value in order to obtain loans and to defraud creditors. The general rule applicable upon a failure to answer a complaint is to accept the factual allegations contained therein as true. *See In re Boccio*, 281 B.R. 171, 174 (Bankr. E.D.N.Y. 2002). Although Provident's allegation of fraud is not accepted as true, the factual allegation that the Defendant pledged the same collateral to multiple lenders is accurate and well known to the Court through its handling of the bankruptcy proceedings. It is inconceivable that the Defendant's corporation could have pledged the same collateral to multiple lenders without knowing that it was acting with reckless disregard to the truth and without an intent to deceive its lenders. Rather, such action amounts to an "active operation of the mind" taken in hopes of cheating another. *See Grumbine,* 2010 WL 4864439 at *4. Thus, under the totality of the circumstances, the Court may infer the presence of the Defendant's knowledge and intent to deceive the lenders. This Court, the ultimate trier of fact in this case, has no doubt of the Defendant's full knowledge and awareness of the fraud that was committed.

The Defendant's counsel asserts that no alleged misconduct is asserted directly against the Defendant and there is insufficient evidence linking the Defendant personally to any alleged misconduct. (Def.'s Br. in Supp. of Mot to Vacate Default J., p. 5) The Court does not find this argument persuasive. In truth, it ignores the obvious. The Defendant was the Chairman, Chief Executive Officer, and sole shareholder of RCA and would, or should, have been fully aware of all contracts and agreements the company entered into.

Under the facts of this case, the Court could conceivably hold the Defendant personally liable under the alter ego theory of piercing the corporate veil. *See Lyon v. Barrett*, 89 N.J. 294 (1982). Although the Court recognizes the exceptional step of ignoring the corporate form, New Jersey law is well-settled on allowing such action in cases of fraud or injustice. *Id*. at 300. In *Walensky v. Jonathan Royce International*, the Superior Court of New Jersey discussed the alter ego theory of piercing the corporate veil in the case of a closely-held corporation. *Walensky v. Jonathan Royce International, Inc.*, 264 N.J. Super. 276, 624 A.2d 613 (App. Div. 1993). The *Walensky* court found that an individual can be held liable where he "was using [the corporation] as his 'alter ego' and thus, was abusing the corporate form in order to advance his own personal interests." *Id.* at 282. "Factors including ownership of a significant amount of stock coupled with the operation of the corporation essentially as the principal's 'personal business conduit,' therefore weigh heavily in favor of finding an alter ego relationship." *Id.* at 283. Accordingly, to distinguish the Defendant from RCA under the circumstances of this case would be to ignore the facts before this Court.

Page 7
October 24, 2011

At present, the Defendant still does not offer any new facts to the Court to indicate that he possesses a meritorious defense. Under the *Budget Blinds* standard, this alone is fatal to the Defendant's present motion.

### B. Prejudice to Plaintiff and Culpable Conduct

Allowing this case to reopen would place Provident in the position of having to reargue and perhaps try a case that it believed concluded months ago. The amount of time and resources to be expended in preparing to relitigate claims already decided sufficiently serves to prejudice Provident. The Court has already noted that the "substantial delay in answering the Plaintiff's allegations has substantially increased the potential for loss of available evidence, or fraud." *JPMorgan Chase Bank, N.A.*, 2010 WL 3745123, at * 2. In addition, the Court has also found that the four-month delay in the Defendant's initial answer was properly categorized as willful neglect and in bad faith. *Id.* at *3-4. The Court noted that, "[t]he Defendant was aware of the suits against him well in advance of the deadline to file answers . . . the Defendant's inability to retain counsel does not relieve him of his obligation to respond to the complaints." *Id.* at *6. The Defendant's deliberate and willful choice not to respond to the Complaint in a timely manner satisfied the Court that the default was a result of his culpable conduct. *Id.* The Defendant fails to offer any new facts to refute those findings. In light of the foregoing and under the criteria set forth in *Budget Blinds, Inc.*, the Court finds that Rule 60(b)(1) does not support vacatur of the default judgment.

### II.  Vacatur of Default Judgment under Rule 60(b)(6)

"Relief under 60(b)(6) is only available where the other subsections of Rule 60(b) do not apply." *Subramanian*, 245 F. App'x. at 117 (citing *Medunic v. Lederer*, 533 F.2d 891, 893 (3d Cir. 1976). To obtain relief from a judgment under Rule 60(b)(6), the party seeking relief must show extraordinary circumstances. *Budget Blinds,* 536 F.3d at 255; *Coltec Indus.*, 280 F.3d at 273 (quoting *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 194 (3d Cir. 1988). In order to demonstrate extraordinary circumstances, the court in *Budget Blinds* stated that the petitioning party would have to show "extreme" and "unexpected" hardship if the judgment stands. *Budget Blinds,* 536 F.3d at 255. However, "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Id.; see, e.g., Coltec*, 280 F.3d at 274 ("[C]ourts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions."). In *Johnson v. United States*, a motion by a defendant requesting relief from a default judgment creating an IRS lien was denied because he did "not contest the lawfulness or the amount of the tax assessment, nor [did] he explain why he did not respond to the initial suit before the default judgment was entered." *Johnson v. United States*, 375 F. App'x. 273, 275-76 (3d Cir. 2010).

Here, the Court already determined that the Defendant committed or directed the alleged fraud through his company, RCA. *JPMorgan Chase Bank, N.A.,* 2010 WL 3745123, at *3.

Page 8
October 24, 2011

Moreover, the lengthy delay on the part of the Defendant was deliberate and provided ample opportunity to destroy or conceal evidence. *Id*. The Defendant was fully aware of the allegations against him yet he actively chose not to answer the Complaint or contest the amount of Provident's proof of claim. Furthermore, his request for an extension to answer was untimely. *Id* at *2. As the Court succinctly noted in its September 14 Opinion:

> [T]he Defendant does not dispute that he had notice of the time limit to file an answer. Instead [he] argues that his delay in answering was beyond his control and therefore excusable because his pending divorce limited his access to funds and made it difficult to retain an attorney . . . . First, there is no fundamental right to representation by an attorney in the civil context . . . . Pandolfelli was apprised of his obligation to respond to the complaints in the respective summonses and was fully capable of filing answers or seeking an extension from the Court before the initial time had expired. If the inability to afford an attorney of one's choosing were a justifiable excuse for failing to answer civil charges, then there would be no finality to judgments obtained against all but the wealthiest of defendants. Although the Court can appreciate the Defendant's desire to protect his rights through the representation by counsel, this does not relieve him of the obligation to defend the litigations against him within the confines of the applicable rules. Because [the inability to retain counsel of his choice was] the Defendant's only proffered reason for the delay in answering the complaint . . . the Court finds that the delay was entirely within his control.

*Id.* at *3.

The Defendant had sufficient time and opportunity to defend the allegations against him, but instead consciously and willfully chose to ignore them for inexcusable reasons. The resulting default and default judgment were to be expected given his course of conduct. Therefore, extraordinary circumstances do not exist that would justify relief under Rule 60(b)(6).

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Defendant has failed to satisfy the elements required to vacate the default judgment under Rule 60(b)(1) and (6). Therefore, the motion is denied.

Page 9
October 24, 2011

      An Order in conformance with this Opinion has been entered by the Court and is attached hereto.

                Very truly yours,

                *s/ Donald H. Steckroth*

                DONALD H. STECKROTH
                UNITED STATES BANKRUPTCY JUDGE

Enclosure